No. 14-1191

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

MILO SHAMMAS,

*Plaintiff-Appellant*,

v.

MARGARET A. FOCARINO, Commissioner of Patents,

*Defendant-Appellee*,

and

DAVID KAPPOS, Director of the United States Patent and
Trademark Office; TERESA STANEK REA, Acting Director of the
United States Patent and Trademark Office,

*Defendants*.

_____

On Appeal from the United States District Court for the Eastern District
of Virginia, Alexandria Division, Case No. 1:12-cv-1462-TSE-TCB

_____

**BRIEF FOR PLAINTIFF-APPELLANT MILO SHAMMAS**

_____

WILLIAM C. STEFFIN
ARMIN AZOD
STEFFIN LELKES AZOD LLP
1801 Century Park East, 24th Floor
Century City, California 90067
(310) 734-8442

WENDY MCGUIRE COATS
  *Of Counsel*
MCGUIRE COATS LLP
3527 Mt. Diablo Blvd. #281
Lafayette, California 94549
(925) 297-6415

AARON M. PANNER
W. JOSS NICHOLS
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

JOHN N. JENNISON
JENNISON & SHULTZ, P.C.
2001 Jefferson Davis Hwy.
Suite 1102
Arlington, Virginia 22202
(703) 415-1640

*Counsel for Plaintiff-Appellant*

June 3, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __14-1191__    Caption: __Milo Shammas v. Margaret Focarino__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Milo Shammas__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _/s/ Aaron M. Panner_____    Date: _____June 3, 2014_____

Counsel for: Milo Shammas_____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____June 3, 2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Aaron M. Panner_____        _____June 3, 2014_____
        (signature)                               (date)

ii

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ..........................................................................iv

JURISDICTION.............................................................................................1

STATEMENT OF THE ISSUE..........................................................................2

STATEMENT OF THE CASE ...........................................................................2

SUMMARY OF ARGUMENT ...........................................................................7

STANDARD OF REVIEW ...............................................................................10

ARGUMENT ................................................................................................11

SECTION 21(b) OF THE LANHAM ACT DOES NOT AUTHORIZE
THE AWARD OF ATTORNEY'S FEES AS PART OF THE
"EXPENSES OF THE PROCEEDING" ................................................................11

    A.    Because Section 21(b) Does Not Contain Any "Specific
        and Explicit Provision for the Allowance of Attorneys'
        Fees," the District Court Had No Authority To Award
        Such Fees.....................................................................................11

    B.    The Legislative History of Section 21(b) Further
        Forecloses the Award of Attorney's Fees ...........................................21

    C.    The District Court's Ruling Undermines the Policy of the
        Statute .........................................................................................24

CONCLUSION ...............................................................................................27

REQUEST FOR ORAL ARGUMENT .................................................................27

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

Page

## CASES

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240
(1975) .......................................................................... 7, 8, 9, 11, 12, 13, 23

*B.F. Goodrich v. Betkoski*, 99 F.3d 505 (2d Cir. 1996) ............................................13

*Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305
(4th Cir. 2001) ...................................................................................7

*Blackburn v. Reich*, 79 F.3d 1375 (4th Cir. 1996)....................................................25

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of
Health & Human Res.*, 532 U.S. 598 (2001)............................................11, 26

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) ...............................21

*Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487 (4th Cir. 2014) .................10

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)...........................24

*Crescent City Estates, LLC, In re*, 588 F.3d 822 (4th Cir. 2009).......................8, 12

*Delta Air Lines, Inc. v. August*, 450 U.S. 346 (1981) ..............................................16

*Eastern Associated Coal Corp. v. Federal Mine Safety &
Health Review Comm'n*, 813 F.2d 639 (4th Cir. 1987)..................................12

*EEOC v. Clay Printing Co.*, 13 F.3d 813 (4th Cir. 1994) ........................................25

*Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714
(1967)..........................................................................................17, 20

*Flora v. United States*, 362 U.S. 145 (1960) ..........................................................17

*FMC Corp. v. Aero Indus., Inc.*, 998 F.2d 842 (10th Cir. 1993)............................24

*Fox v. Vice*, 131 S. Ct. 2205 (2011)..................................................................15, 25

*Hyatt v. Kappos*, 625 F.3d 1320 (Fed. Cir. 2010) ...................................................26

*Insurance Co. of N. Am. v. S/S Texas*, No. 84 Civ. 1700,
    1984 WL 1300 (S.D.N.Y. Nov. 30, 1984) ...................................................13

*Kappos v. Hyatt*, 132 S. Ct. 1690 (2012) ...................................................22

*Key Tronic Corp. v. United States*, 511 U.S. 809 (1994) ...............................11, 24

*Marek v. Chesny*, 473 U.S. 1 (1985) ...................................................19

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) ...................................24, 25

*Marx v. General Revenue Corp.*, 133 S. Ct. 1166 (2013) ...........................7, 11, 26

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ...................................................20

*Oelrichs v. Spain*, 82 U.S. (15 Wall.) 211 (1872) ...................................................22-23

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    483 U.S. 711 (1987) ...................................................25

*Robertson v. Cooper*, 46 F.2d 766 (4th Cir. 1931) ...................................................18

*Runyon v. McCrary*, 427 U.S. 160 (1976) ...................................................11

*Small v. United States*, 544 U.S. 385 (2005) ...................................................17

*United States v. Chapman*, 146 F.3d 1166 (9th Cir. 1998) ...............................13, 14

*United States v. Dico, Inc.*, 266 F.3d 864 (8th Cir. 2001) ...................................................13

*United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313 (2011) ...........................15

*United States ex rel. Smith v. Gilbert Realty Co.*, 34 F. Supp. 2d 527
    (E.D. Mich. 1998) ...................................................16

*Vandenplas v. City of Muskego*, 797 F.2d 425 (7th Cir. 1986) ...................................................1

*West Virginia Highlands Conservancy, Inc. v. Norton*,
343 F.3d 239 (4th Cir. 2003) ................................................................. 25-26

*York Research Corp. v. Landgarten*, 927 F.2d 119 (2d Cir. 1991) ............. 12-13, 17

## STATUTES, REGULATIONS, AND RULES

Act of March 3, 1839, ch. 88, § 10, 5 Stat. 353, 354 ................................................. 22

Pub. L. No. 79-489, § 21, 60 Stat. 427, 435 (1946) ................................................. 21

Pub. L. No. 79-587, 60 Stat. 778 (1946) ................................................................. 20

Pub. L. No. 87-772, § 12, 76 Stat. 769, 771-73 (1962) ........................................... 21

Pub. L. No. 93-600, § 3, 88 Stat. 1955 (1975) ........................................................ 20

Pub. L. No. 100-667, § 120, 102 Stat. 3935, 3942 (1988) ....................................... 23

Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051 *et seq.*:

§ 1, 15 U.S.C. § 1051 ....................................................................... 2

§ 1(b), 15 U.S.C. § 1051(b) .............................................................. 3

§ 2, 15 U.S.C. § 1052 ....................................................................... 2

§ 20, 15 U.S.C. § 1070 ..................................................................... 2

§ 21(a), 15 U.S.C. § 1071(a) ............................................................. 3

§ 21(a)(4), 15 U.S.C. § 1071(a)(4) .................................................... 3

§ 21(b), 15 U.S.C. § 1071(b) ...................................................... *passim*

§ 21(b)(1), 15 U.S.C. § 1071(b)(1) .................................................... 3

§ 21(b)(3), 15 U.S.C. § 1071(b)(3) .................. 2, 3, 5, 6, 9, 10, 12, 17, 23, 27

U.S. Rev. Stat. (R.S.) § 4915 ................................................... 9, 21, 22, 23

5 U.S.C. § 552b(i) ...................................................................................19

7 U.S.C. § 2565 .......................................................................................19

11 U.S.C. § 363(n) .............................................................................14, 19

12 U.S.C. § 1464(d)(1)(B)(vii) ...............................................................14

12 U.S.C. § 1723i(e) ...............................................................................20

12 U.S.C. § 1786(p) ................................................................................14

12 U.S.C. § 1818(n) ................................................................................14

12 U.S.C. § 1844(f) ...........................................................................14, 19

12 U.S.C. § 2273 .....................................................................................14

12 U.S.C. § 3108(b)(5) ...........................................................................14

15 U.S.C. § 15c(a)(2) ..............................................................................20

15 U.S.C. § 26 .........................................................................................19

15 U.S.C. § 77www(a) ............................................................................16

15 U.S.C. § 6309(d) ................................................................................14

16 U.S.C. § 470aaa-6(b)(2)(B) ...............................................................20

18 U.S.C. § 2333(a) ................................................................................16

26 U.S.C. § 6673(a)(2) ............................................................................14

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1875(d)(2) ...........................................................................14

28 U.S.C. § 1920 .....................................................................................17

28 U.S.C. § 1920(4) ........................................................................................18

29 U.S.C. § 2005(c)(3) ...................................................................................16

29 U.S.C. § 2104(a)(6) ...................................................................................16

30 U.S.C. § 1270(d) ........................................................................................16

31 U.S.C. § 3730 .............................................................................................16

31 U.S.C. § 3730(d)(2) ...................................................................................16

31 U.S.C. § 3730(d)(4) ...................................................................................14

31 U.S.C. § 3730(f) .........................................................................................16

35 U.S.C. § 145 ........................................................................5, 21, 22, 23

35 U.S.C. § 146 ...............................................................................................21

35 U.S.C. § 285 ...............................................................................................20

42 U.S.C. § 669a(c)(3) ....................................................................................16

42 U.S.C. § 1988(b) ........................................................................................19

42 U.S.C. § 9601(23) ......................................................................................14

42 U.S.C. § 9601(25) ......................................................................................14

42 U.S.C. § 9604(b)(1) ....................................................................................14

42 U.S.C. § 9607(a)(4)(A) ..............................................................................13

37 C.F.R. § 2.6(a)(1) .......................................................................................26

37 C.F.R. § 2.6(a)(18) .....................................................................................26

Fed. R. Civ. P. 37(b)(2)(C) ..............................................................................5

Fed. R. Civ. P. 37(d) (1937 ed.)..............................................................18

Fed. R. Civ. P. 54(d) .............................................................................5

## LEGISLATIVE MATERIALS

S. Rep. No. 87-2107 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2844 .....................22

S. Rep. No. 93-1400 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132 .....................21

## OTHER MATERIALS

Philip M. Payne, *Costs in Common Law Actions in the Federal Courts*, 21 Va. L. Rev. 397 (1934) .......................................... 18-19

10 Charles A. Wright et al., *Federal Practice and Procedure* (3d ed. 1998) ..........................................................................18, 25

## JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brought this action under section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b).  This Court has jurisdiction to review the final decision of the district court awarding attorney's fees pursuant to 28 U.S.C. § 1291.  *See*, *e.g.*, *Vandenplas v. City of Muskego*, 797 F.2d 425, 427-28 (7th Cir. 1986).  The district court granted summary judgment on October 15, 2013, *see* JA 34, and granted Defendant's motion for fees and expenses in a separate order on January 3, 2014, *see* JA 80, thereby disposing of all parties' claims.  Plaintiff did not appeal the district court's order granting summary judgment.  Plaintiff timely filed his notice of appeal of the order granting Defendant's motion for fees and expenses on February 27, 2014.  *See* JA 81.

## STATEMENT OF THE ISSUE

Section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b), permits an unsuccessful applicant for a trademark to bring a "civil action" challenging the decision denying registration.  In any case where there is no adverse private party, "unless the court finds the expenses to be unreasonable, all the expenses of the proceeding shall be paid by the party bringing the case, whether the final decision is in favor of such party or not."  15 U.S.C. § 1071(b)(3).  The issue presented is:

Whether the "expenses of the proceeding" that "shall be paid" by the trademark applicant in an action under 15 U.S.C. § 1071(b) include the salaries of attorneys and paralegals employed by the United States Patent and Trademark Office ("PTO").

## STATEMENT OF THE CASE

1.     Section 1 of the Lanham Act, 15 U.S.C. § 1051, authorizes the "owner of a trademark used in commerce" to apply for "registration of its trademark . . . by paying the prescribed fee and filing in the [PTO] an application and a verified statement."  Section 2 of the Lanham Act, 15 U.S.C. § 1052, describes the grounds for refusing registration of a trademark.  Section 20 of the Lanham Act allows an applicant to take an appeal to the Trademark Trial and Appeal Board (the "Board") from "any final decision of the examiner in charge of the registration of marks upon the payment of the prescribed fee."  15 U.S.C. § 1070.

2

Section 21 of the Lanham Act prescribes the available avenues for judicial review of an adverse decision of the Board. Section 21(a) authorizes an appeal to the United States Court of Appeals for the Federal Circuit. In such an appeal, the court of appeals "shall review the decision from which the appeal is taken on the record before the [PTO]." *Id.* § 1071(a)(4). Section 21(b) provides, as an alternative to the appeal authorized by section 21(a), that the aggrieved applicant may file a "civil action" to obtain a remedy for an adverse decision. *Id.* § 1071(b)(1). In a proceeding under that section, a party is not limited to the record before the PTO, but can also develop new evidence in support of its claim. *See id.* § 1071(b)(3).

In a civil action filed under section 21(b), "where there is no adverse party" – that is, when the rejection follows an ex parte application process rather than an inter partes proceeding between competing applicants – "unless the court finds the expenses to be unreasonable, all the expenses of the proceeding shall be paid by the party bringing the case, whether the final decision is in favor of such party or not." *Id.*

**2.**     Plaintiff-appellant Milo Shammas ("Shammas") is the sole owner of Dr. Earth, Inc., a company selling natural, organic gardening products, including soils and fertilizers. DE 14, at 1. On June 12, 2009, Shammas, pursuant to section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), filed a federal trademark application

for the mark PROBIOTIC.  JA 8-9 (¶ 5).  An Office Action issued on September 14, 2009, refused registration on the basis that the applied-for mark was merely descriptive and generic.  JA 9 (¶ 6).  A Final Office Action maintaining the rejection was issued on February 24, 2011; the Board issued an order affirming the rejection on October 25, 2012.  JA 10 (¶¶ 8, 12).

**3.**     On December 19, 2012, Shammas filed a complaint pursuant to section 21(b) of the Lanham Act in the United States District Court for the Eastern District of Virginia against the acting director of the PTO challenging the Board's decision.  JA 7-13.  After the parties filed cross-motions for summary judgment, the district court granted judgment as a matter of law to the PTO, finding that "plaintiff's submissions on product sales, market share, advertising expenditures, and seller affidavits are collectively insufficient to satisfy plaintiff's burden to show the existence of secondary meaning."  JA 32.  Because the court found that the PTO was entitled to judgment with respect to the "genericness issue," it declined to decide whether the PTO was entitled to summary judgment on whether the mark had acquired a secondary meaning or was merely descriptive.  *See* JA 32-33.

**4.** Following the district court's ruling, the PTO filed a motion seeking payment from Shammas of certain fees and expenses.[1] *See* DE 44. First, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), the PTO sought an order requiring Shammas to pay attorney's fees in connection with the PTO's filing of a motion to strike that the district court had granted. *See id.* at 1. Shammas did not oppose the award of fees, noting that "plaintiff has been informed that California counsel will personally pay any judgment entered with respect to the USPTO's Rule 37 motion." DE 48, at 1.

Second, pursuant to 15 U.S.C. § 1071(b)(3), the PTO moved for payment of "expenses." Under that rubric, the PTO sought $396.40 for photocopying charges, which Shammas did not oppose. *See id.* at 14. In addition, the PTO sought to recover the "outlay of . . . salaries towards this litigation" for "USPTO attorneys and paralegals" – in the amount of $36,926.59 – as a purported " 'expense' of [the] proceeding." DE 45, at 15, 16. Shammas opposed the PTO's request, noting (without contradiction by the PTO) that "nowhere in the hundreds of cases which have proceeded in district courts" under either 15 U.S.C. § 1071(b) or the analogous provision of the Patent Act, 35 U.S.C. § 145, had the PTO "asked to

---

[1] Prior to moving for fees and expenses, the PTO filed two consent motions to enlarge the 14-day period for filing a " 'claim for attorney's fees and related nontaxable expenses' " under Federal Rule of Civil Procedure 54(d). DE 40, at 2 (quoting Fed. R. Civ. P. 54(d)); *see* DE 42. The PTO noted in its first motion for enlargement that it "d[id] not believe [Rule 54(d)] applie[d]," but nonetheless sought additional time "in an abundance of caution." DE 40, at 2.

recover the money paid to its attorneys for hours worked" as an "expense."  DE 48, at 2.  Shammas further noted that, in light of the strong presumption under the "American Rule" that each party to a litigation must bear its own attorney's fees, Congress's failure expressly to authorize payment of attorney's fees under § 1071(b) precluded the award of such fees.  *Id.* at 3.

    **5.**    The district court granted the PTO's motion in substantial part.[2]  *See* JA 69-79.  With respect to the PTO's request for attorney's fees under § 1071(b)(3), the district court found that the question was "not difficult to resolve," being a "straightforward case of statutory interpretation with the analysis beginning and ending with the plain language of the statute."  JA 73.  The court stated that "the ordinary definition of the term 'expenses' answers the question presented" and that "Congress's addition of the word 'all' to clarify the breadth of the term 'expenses'" made it "pellucidly clear Congress intended that the plaintiff in such an action pay for all the resources expended by the PTO during the litigation, including attorney's fees."  *Id.*  The court also referred to several federal statutes, "all of which explicitly include 'attorney's fees' as a subset of 'expenses.'"  JA 74.

---

    [2] The district court held that the PTO's request for attorney's fees in connection with its motion to strike late-filed evidence was excessive and reduced the award to $2,280.  JA 69.

**6.** Shammas filed a timely notice of appeal solely for purposes of challenging the district court's decision to award attorney's fees. *See* JA 81.

## SUMMARY OF ARGUMENT

This case presents the narrow but important question whether "all the expenses of the proceeding" in an action under section 21(b) includes the PTO's attorney's fees. Settled principles of statutory construction, reinforced by the history of section 21(b), make clear that Congress did not intend to authorize the PTO to recover its ordinary attorney's fees incurred in connection with a civil action brought under that provision. The contrary decision of the district court is at odds with the scheme enacted by Congress, creating an unprecedented obstacle to district court review of adverse decisions concerning registration of trademarks. This Court should reverse.

**A.     1.** *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), clarified that a district court lacks statutory authority to award attorney's fees unless the statute specifically and explicitly provides such authority. *See id.* at 260; *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 413-14 (4th Cir. 2001) (en banc); *see also Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013) ("[T]he background presumptions governing attorney's fees . . . are a highly relevant contextual feature."). The statutory requirement that a plaintiff under section 21(b) pay "all the expenses of the proceeding" does not

meet the *Alyeska* standard: it contains no specific and explicit reference to attorney's fees, and therefore cannot be read to authorize such an award. *See In re Crescent City Estates, LLC*, 588 F.3d 822, 826 (4th Cir. 2009) (noting that, "[i]n order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law") (internal quotation marks omitted). We are aware of no federal appellate decision since *Alyeska* that has interpreted a statute to authorize the award of attorney's fees based on comparable language.

    **2.**    The district court concluded that the plain meaning of the word "expenses" may include attorney's fees and that the statute's use of the term "*all* the expenses" was sufficient to require an award of attorney's fees. *See* JA 73. But the term "expenses" is ambiguous – while its ordinary meaning may encompass attorney's fees, Congress frequently uses the term as a category of expenditure distinct from attorney's fees. And while it is true, as the district court noted, that Congress sometimes authorizes an award of expenses "including" attorney's fees, that phraseology does not resolve the meaning when the term "expenses" is used without any reference to attorney's fees. To the contrary, while there are many statutes that refer to *costs* "including" attorney's fees, no one would argue that the term "costs," standing alone, authorizes an award of attorney's fees. The use of the term "all" does not resolve the ambiguity: the use of the phrase addresses the district court's discretion with regard to allocation of allowable

expenses, but it does not indicate that the term "expenses" includes attorney's fees, much less do so specifically and explicitly, as required by *Alyeska*.

**3.**    Comparing section 21(b)(3) to other federal statutes that specifically and explicitly authorize the recovery of attorney's fees further reinforces the conclusion that section 21(b) does not allow the PTO to recover its attorney's fees. Hundreds of provisions of the United States Code authorize the award of attorney's fees, either by mandating such fees or by giving the district court discretion to award them, by doing so in so many words.  Congress easily could have adopted such express language under section 21(b).  Its decision not to do so should be given effect.

**B.**    The legislative history of section 21(b) is likewise inconsistent with the argument that the provision was intended to provide for the award of attorney's fees.  The statute's language originally incorporated by reference a provision of the patent statutes, R.S. § 4915, that authorized a civil action by an unsuccessful patent applicant.  That statute provided that in circumstances where a patent application is rejected after an ex parte application proceeding (rather than after an interference proceeding, which is inter partes), "all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not."  That provision had been on the books, with a substantially similar requirement for payment of expenses, since 1839.  Never in the history of that provision – so far as we are

aware – had the patent office sought, much less been awarded, reimbursement of attorney's fees in an action by a patent applicant challenging a rejection of his or her application.  In enacting almost identical language in section 21(b), it is inconceivable that Congress intended an abrupt departure in trademark cases from the exceedingly long, settled, and well-understood practice in patent cases.

C.      There is no policy justification for imposing attorney's fees in actions under section 21(b), and the district court identified none.  In virtually every instance where a statute authorizes the award of attorney's fees, the award serves as a punitive measure for attorney or party misconduct or to encourage enforcement against wrongdoers.  We are aware of no other provision in the United States Code where Congress requires a litigant to pay the government's attorney's fees, irrespective of whether the litigant prevails.  Although Congress presumably has the power to create such a formidable barrier to access to the district court, the district court pointed to nothing to support its conclusion that Congress intended to take such an unparalleled step in section 21(b).

## STANDARD OF REVIEW

The district court's construction of 15 U.S.C. § 1071(b)(3) is reviewed *de novo*.  *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 489 (4th Cir. 2014) (per curiam).

# ARGUMENT

## SECTION 21(b) OF THE LANHAM ACT DOES NOT AUTHORIZE THE AWARD OF ATTORNEY'S FEES AS PART OF THE "EXPENSES OF THE PROCEEDING"

### A.  Because Section 21(b) Does Not Contain Any "Specific and Explicit Provision for the Allowance of Attorneys' Fees," the District Court Had No Authority To Award Such Fees

**1.**     This Court should reverse the district court's unprecedented decision to award the PTO attorney's fees in an action under section 21(b) of the Lanham Act because, construed in light of applicable principles of statutory construction, the statute does not authorize such an award.  The Supreme Court has repeatedly made clear that, "[u]nder the bedrock principle known as the 'American Rule,' each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Marx*, 133 S. Ct. at 1175 (internal quotation marks and brackets omitted).  In light of that "bedrock principle," *id.*, district courts lack statutory authority to award attorney's fees in the absence of "*specific and explicit provision[] for the allowance of attorneys' fees.*"  *Alyeska*, 421 U.S. at 260 (emphasis added); *see also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 608 (2001); *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994) ("[A]ttorney's fees generally are not a recoverable cost of litigation absent explicit congressional authorization") (internal quotation marks omitted); *Runyon v. McCrary*, 427 U.S. 160, 185 (1976) (same);

*Crescent City Estates*, 588 F.3d at 825 ("clearly and directly"); *Eastern Associated Coal Corp. v. Federal Mine Safety & Health Review Comm'n*, 813 F.2d 639, 644 (4th Cir. 1987) (rejecting argument that statute "impliedly" granted right to recover attorney's fees). *Alyeska* and its progeny establish that a district court may not read a federal statute to authorize attorney-fee-shifting unless the statute makes Congress's intention clear by expressly referring to attorney's fees.[3]

Section 21(b) does not meet the *Alyeska* standard, because it contains no specific and explicit language authorizing an award of attorney's fees. Rather, the statute provides that, when an applicant for registration of a trademark brings a district court action to challenge the rejection of his application, the applicant must pay "all the *expenses of the proceeding*" unless the court "finds the expenses to be unreasonable." 15 U.S.C. § 1071(b)(3) (emphasis added).

At a minimum, the term "expenses" is ambiguous. Although legal fees may "arguably" be "'expenses' in the ordinary sense of that term," there "is a general presumption against fee-shifting in American courts," which "militates against a broad reading of 'expenses.'" *York Research Corp. v. Landgarten*, 927 F.2d 119,

---

[3] The Supreme Court has recognized certain narrow equitable exceptions to the American Rule, including the inherent authority of the court to award attorney's fees as a sanction for litigation misconduct and the "common fund" doctrine, under which a plaintiff may recover attorney's fees expended to "preserv[e] or recover[] a fund for the benefit of others in addition to himself." *Alyeska*, 421 U.S. at 257-58. No such equitable exception is implicated by this case.

123 (2d Cir. 1991) (discussing interpretation of arbitration decision awarding "expenses"); *see Insurance Co. of N. Am. v. S/S Texas*, No. 84 Civ. 1700, 1984 WL 1300, at *5 (S.D.N.Y. Nov. 30, 1984) (refusing to award attorney's fees under statute that requires indemnification of "all loss, damages, and expenses" because, "[o]rdinarily, absent express statutory authority or egregious conduct, American law does not permit a successful litigant to recover attorney's fees from his adversary"). Because firmly settled principles of statutory construction permit the award of attorney's fees only when the statute specifically and explicitly provides them, the ambiguity in section 21(b) is sufficient to defeat the PTO's claim.

Although Shammas relied heavily on *Alyeska*, the district court did not cite it, much less explain how its decision could be squared with its holding. It cannot be. To the contrary, we have been unable to find any court of appeals decision affirming an award of attorney's fees based on a statutory provision comparable to section 21(b).[4]

---

[4] The only cases we have found that interpret a statute to authorize an award of fees in the absence of an in-so-many-words reference to "attorney's fees" or the equivalent involve the government's recovery of response costs under section 107(a)(4)(A) of CERCLA, 42 U.S.C. § 9607(a)(4)(A). *See United States v. Dico, Inc.*, 266 F.3d 864 (8th Cir. 2001); *United States v. Chapman*, 146 F.3d 1166 (9th Cir. 1998); *see also B.F. Goodrich v. Betkoski*, 99 F.3d 505 (2d Cir. 1996). The relevant provisions of CERCLA, however, do not address allocation of litigation costs; rather, section 107(a)(4)(A) renders certain parties "liable" for "all costs of *removal or remedial action* incurred by the United States." 42 U.S.C. § 9607(a)(4)(A) (emphasis added). CERCLA expressly defines the term "removal" to include "action taken under [section 104(b)]" of CERCLA, *id.*

**2.**    Reading section 21(b)'s reference to "expenses" to *exclude* attorney's fees is consistent with the many federal statutes that authorize an award of expenses as a category of expenditure that is expressly listed as distinct from attorney's fees.  For example:

- The Bankruptcy Code allows a trustee to recover "any costs, attorneys' fees, or expenses incurred" in avoiding a sale made pursuant to rigged bids;[5]

- Several provisions of Title 12 authorize the court to award "reasonable expenses and attorneys' fees";[6]

- 15 U.S.C. § 6309(d) authorizes the award of "reasonable attorneys fees and expenses";

- The Internal Revenue Code authorizes the Tax Court to require payment of "excess costs, expenses, and attorneys' fees";[7]

- 28 U.S.C. § 1875(d)(2) refers to "attorney fees and expenses incurred"; and

---

§ 9601(23); and section 104(b) expressly provides that such actions include "planning, *legal*, fiscal, economic, engineering, architectural, and other studies or investigations as . . . necessary or appropriate to plan and direct response actions, *to recover the costs thereof*, and to enforce the provisions of this chapter," *id.* § 9604(b)(1) (emphases added); *see also id.* § 9601(25) (defining "[t]he terms 'respond' or 'response'" to mean "remove, removal, remedy, and remedial action" and clarifying that "all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto").  Courts have read the express reference to "legal" costs and "enforcement activities" to include attorney's fees, particularly in light of the statute's deterrent purposes.  *See Chapman*, 146 F.3d at 1176 ("Who knows, it might even encourage responsible parties not to pollute and contaminate property in the first place.").

[5] 11 U.S.C. § 363(n).

[6] *E.g.*, 12 U.S.C. § 1464(d)(1)(B)(vii); *id.* § 1786(p); *id.* § 1818(n); *id.* § 1844(f); *id.* § 2273; *id.* § 3108(b)(5).

[7] 26 U.S.C. § 6673(a)(2).

14

- 31 U.S.C. § 3730(d)(4) authorizes the award of "reasonable attorneys' fees and expenses."

If the term "expenses" necessarily encompassed attorney's fees, the separate reference to attorney's fees in each of the preceding examples would be superfluous. *Cf. United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2330 (2011) (rejecting statutory interpretation that would render another statutory provision superfluous).

The district court – without discussing any of the federal statutes that list attorney's fees as a separate category of recovery from "expenses" – noted that several federal statutes authorize the award of expenses "*including*" attorney's fees, thus suggesting that the term "expenses" can encompass such fees. *See* JA 74. This reasoning, however, supports Shammas, not the PTO, because it shows that when Congress wishes to authorize an award of attorney's fees as part of the expenses incurred, it does so expressly. *See infra* pp. 19-21. In any event, the district court's observation at most illustrates what no one disputes – namely, that, in ordinary parlance, the term "expenses" is broad enough to include attorney's fees.[8] That rationale alone provides no basis for ignoring the settled rule that, without specific and explicit authorization, a district court lacks statutory authority

---

[8] *Fox v. Vice*, 131 S. Ct. 2205 (2011), likewise does not support the holding below; it simply notes in passing that "[o]ur legal system generally requires each party to bear his own litigation expenses, including attorney's fees." *Id.* at 2213. That case involved the construction of an express fee-shifting provision; it did not authorize recovery of fees under the generic rubric of "expenses."

15

to award attorney's fees.[9]  Several federal statutes also authorize the award of *costs* "including attorney's fees."  *E.g.*, 18 U.S.C. § 2333(a); 29 U.S.C. § 2005(c)(3); 42 U.S.C. § 669a(c)(3); *see* 15 U.S.C. § 77www(a) ("reasonable costs, including reasonable attorneys' fees"); 30 U.S.C. § 1270(d); *see also* 29 U.S.C. § 2104(a)(6) (authorizing court to award "prevailing party a reasonable attorney's fee *as part of the costs*") (emphasis added); *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 378 (1981) (Rehnquist, J., dissenting) ("Some [fee-shifting] statutes define attorney's fees as an element of costs while others separate fees from other taxable costs."). There is nothing inconsistent about referring to costs as including attorney's fees – just as attorney's fees constitute "expenses" in ordinary parlance, so too are attorney's fees a "cost" of litigation within the ordinary meaning of the word.  Yet

---

[9] *United States ex rel. Smith v. Gilbert Realty Co.*, 34 F. Supp. 2d 527 (E.D. Mich. 1998), cited by the district court, is fully consistent with this principle:  that case construed the False Claims Act, *see* 31 U.S.C. § 3730, to *preclude* an award of attorney's fees against the government.  *See* 34 F. Supp. 2d at 531.  The court concluded that 31 U.S.C. § 3730(f), which protects the government from liability "for expenses which a person incurs in bringing an action under this section," precluded an award of attorney's fees because "it would [not] be proper to read attorneys' fees out of the more general category of expenses *as that term is used in the FCA*."  *Id.* (emphasis added).  The False Claims Act expressly lists "attorneys' fees" when describing a *qui tam* plaintiff's recovery.  *See*, *e.g.*, 31 U.S.C. § 3730(d)(2) ("Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.  All such expenses, fees, and costs shall be awarded against the defendant.").  The court concluded that the express authorization of an attorney's fee award, separate from expenses, *against the defendant* in subsection (d)(2) was insufficient to justify awarding attorney's fees *against the government*.  *See* 34 F. Supp. 2d at 530.

there can be no dispute that a statutory reference to costs – in the absence of language *expressly* authorizing attorney's fees – cannot be read to authorize an award of such fees. *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 720 (1967) (holding that Lanham Act provision authorizing award of "costs of the action" in infringement suit did not authorize award of attorney's fees).[10]  That conclusion applies to the term "expenses" as well.

Also contrary to the district court's reasoning, the statute's reference to "*all the expenses of the proceeding*" does not indicate that Congress intended to authorize the award of attorney's fees.  The use of the modifying term "all" does not resolve any inherent ambiguity in the term "expenses."  *See York Research*, 927 F.2d at 123 (finding phrase "any and all . . . expenses" ambiguous); *see also Small v. United States*, 544 U.S. 385, 389 (2005); *Flora v. United States*, 362 U.S. 145, 149 (1960) ("'[A]ny sum,'" while a "catchall" phrase, does not "define what it catches").  By requiring the applicant to pay "all the expenses of the proceeding," the statute simply addresses the court's ordinary discretion to modify the award.  *Cf.* 15 U.S.C. § 1071(b)(3) ("In suits brought hereunder, the record in

_____

[10] In *Fleischmann*, the Court relied in part on the fact that 28 U.S.C. § 1920 enumerates costs that may be taxed in actions in federal court, noting that the statute does not include attorney's fees.  Although Title 28 contains no comparable definition of "expenses," the other reasons underlying the Court's decision – in particular, the Court's refusal to infer, based on ambiguous language, that Congress intended to authorize the award of attorney's fees – have been reinforced in subsequent cases and apply fully here.

the [PTO] shall be admitted on motion of any party, upon such terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes."). It does not explicitly authorize payment of attorney's fees.[11]

Furthermore, the district court ignored the fact that the statute refers to the expenses "*of the proceeding*," not the expenses "of the PTO" or "incurred by the PTO." The reference to "expenses of the proceeding" is most naturally read as synonymous with "costs of the proceeding" – that is, taxable costs.[12] The evident purpose of the provision is to override the ordinary presumption that such costs are to be awarded to the prevailing party. *Cf.* Fed. R. Civ. P. 37(d) (1937 ed.); Philip M. Payne, *Costs in Common Law Actions in the Federal Courts*, 21 Va. L. Rev.

---

[11] The statute does preserve a measure of district court discretion by permitting the court to deny expenses that are "unreasonable." *Cf.* 10 Charles A. Wright et al., *Federal Practice and Procedure* § 2668, at 238 (3d ed. 1998) ("Wright & Miller") (discussing district court's discretion to deny recovery of unreasonable or unnecessary expenditures otherwise taxable as costs).

[12] In the district court, Shammas conceded that the term "expenses" is broader than taxable costs. *See* DE 48, at 2; *Robertson v. Cooper*, 46 F.2d 766, 769 (4th Cir. 1931). That concession was incorrect, but it is not material. *Robertson* addressed only travel expenses to attend a deposition, which the PTO did not seek in this case. Aside from attorney's fees, the PTO did not seek recovery of any "expenses" other than copying charges, which are taxable costs, *see* 28 U.S.C. § 1920(4), and which plaintiff did not challenge. Shammas never conceded that section 21(b) authorizes the award of attorney's fees, and the district court did not refer to his concession in its decision. The question whether other types of expenditures may be recovered as "expenses" under section 21(b) is not presented here, and the Court need not address any question other than whether section 21(b) authorizes the award of attorney's fees.

18

397 (1934).  It does not override the rule that all parties to litigation presumptively are to bear their own attorney's fees.

**3.**     Congress knows how to authorize the award of attorney's fees expressly when it wishes to do so.  *See Marek v. Chesny*, 473 U.S. 1, 8 (1985) (noting that, by 1938, "most of the exceptions [to the American Rule] were found in federal statutes that directed courts to award attorney's fees as part of costs in particular cases").  The district court's construction of section 21(b) ignored the fact that Congress has authorized attorney's fees in so many words in literally hundreds of statutes, including many adopted before section 21(b).  Such statutes can be organized in at least three broad categories:  (1) those that mandate or allow the award of fees to successful litigants to encourage private enforcement of important federal statutes or to sanction egregious conduct;[13] (2) those that authorize the district court, in its discretion, to award attorney's fees, often as a sanction for litigation misconduct;[14] and (3) those that provide for the award of attorney's fees to the United States or state governments where, for example, the government sues to remedy violations of civil rights or other public

---

[13] *See*, *e.g.*, 11 U.S.C. § 363(n); 15 U.S.C. § 26; 42 U.S.C. § 1988(b).

[14] *See*, *e.g.*, 5 U.S.C. § 552b(i); 7 U.S.C. § 2565; 12 U.S.C. § 1844(f).

19

transgressions.[15]  In all such cases, statutes refer to attorney's fees in so many words.

The intellectual property laws also demonstrate Congress's ability to explicitly and specifically authorize attorney's fee awards when it so intends.  Just one month after Congress adopted the original version of section 21 of the Lanham Act, Congress amended the patent statutes to add a provision authorizing the court to award attorney's fees to the prevailing party in patent cases "in its discretion."  *See* Pub. L. No. 79-587, 60 Stat. 778 (1946) (adding section 70 to Title 35); *see generally Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) (discussing history of 35 U.S.C. § 285).

Similarly, Congress amended a separate provision of the Lanham Act itself to provide for attorney's fees specifically and explicitly.  After the Supreme Court's decision in *Fleischmann* prohibiting an award of attorney's fees in infringement actions as "costs of the action," *see* 386 U.S. at 720, Congress amended section 35 of the Lanham Act to authorize an award of attorney's fees expressly.  *See* Pub. L. No. 93-600, § 3, 88 Stat. 1955 (1975) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").  The Senate Report accompanying the legislation noted that the amendment was necessary because "[e]xisting law since 1967 is that attorney fees are recoverable

---

[15] *See*, *e.g.*, 12 U.S.C. § 1723i(e); 15 U.S.C. § 15c(a)(2); 16 U.S.C. § 470aaa-6(b)(2)(B).

only in the presence of express statutory authority." S. Rep. No. 93-1400, at 2

(1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133. Congress made no

corresponding change to section 21(b). *Cf. City of Rancho Palos Verdes v.*

*Abrams*, 544 U.S. 113, 122-23 & n.4 (2005) (noting that statutory remedies

"certainly do not include attorney's fees" where statute in question "authorizes the

award of attorney's fees in a number of provisions" but not in the applicable

provision).

### B.     The Legislative History of Section 21(b) Further Forecloses the Award of Attorney's Fees

The conclusion that the district court exceeded its authority in awarding

attorney's fees is strongly reinforced by the history of the statute that provided the

model for section 21(b), R.S. § 4915, the predecessor of sections 145 and 146 of

the Patent Act. Like section 21(b), R.S. § 4915 allowed an unsuccessful applicant

for a patent to file suit in federal court and, in cases where "there [was] no

opposing party," required that "all the expenses of the proceeding . . . be paid by

the applicant, whether the final decision is in his favor or not."[16]

---

[16] When first enacted in 1946, section 21 of the Lanham Act incorporated
R.S. § 4915 by reference, allowing any aggrieved applicant for registration of a
trademark to "proceed under section 4915, Revised Statutes, as in the case of
applicants for patents, under the same conditions, rules, and procedure as are
prescribed in the case of patent appeals or proceedings so far as they are
applicable." Pub. L. No. 79-489, § 21, 60 Stat. 427, 435 (1946). In 1962,
Congress amended section 21 into roughly its current form, *see* Pub. L. No. 87-
772, § 12, 76 Stat. 769, 771-73 (1962), in order to "incorporate[], with necessary

R.S. § 4915 was the latest version of a statute providing patent applicants the opportunity to seek relief before the district court following an adverse patent office decision.  The predecessor to R.S. § 4915 dated back to 1839 and contained the substantially similar language found in section 21(b) requiring the applicant to pay the expenses of the proceeding.  Section 10 of the Act of March 3, 1839, 5 Stat. 353, 354, authorized an applicant to file a bill in equity in "all cases where patents are refused for any reason whatever," but required that, "in all cases where there is no opposing party, . . . the whole of the expenses of the proceeding shall be paid by the applicant, whether the final decision shall be in his favor or otherwise." *See Kappos v. Hyatt*, 132 S. Ct. 1690, 1697-98 (2012) (recounting history).  Today, dissatisfied patent applicants have recourse to a civil action through 35 U.S.C. § 145, the successor to R.S. § 4915, which continues to require that "[a]ll the expenses of the proceedings . . . be paid by the applicant."

In the 175 years that these provisions have been in existence, we are aware of no other case in which a court has awarded attorney and paralegal salaries to the PTO as part of the "expenses of the proceedings."  That absence of authority is consistent with the 19th century practice of courts sitting in equity, which generally followed the American Rule.  *See*, *e.g.*, *Oelrichs v. Spain*, 82 U.S. (15 Wall.) 211,

---

changes in language, the various provisions of [the Patent Act] relating to . . . appeals and review," S. Rep. No. 87-2107 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2844, 2850.

231 (1872) ("In debt, covenant and assumpsit damages are recovered, but counsel fees are never included.  So in equity cases, where there is no injunction bond, only the taxable costs are allowed to the complainants.").  In creating the bill in equity for aggrieved patent applicants in 1839, Congress explicitly altered the usual rule of costs to the prevailing party by taxing the applicant with the "expenses of the proceeding . . . whether the final decision shall be in his favor or otherwise."  But no court of which we are aware – other than the district court in this case – has read Congress's decision to have implicitly included a mandate also to award attorney's fees to the government, regardless of the outcome on the merits.[17] Given that long and well-settled practice under section 145, R.S. § 4915, and their predecessors, Congress would have understood that, by adopting the same "all expenses of the proceeding" language in the Lanham Act, it was making no provision for the PTO to recover its attorney's fees.

Congress last substantively amended section 21(b)(3) in 1988, relieving applicants from paying expenses if "the court finds the expenses to be unreasonable."  Pub. L. No. 100-667, § 120, 102 Stat. 3935, 3942 (1988). Congress added that limitation 13 years after the Supreme Court decided *Alyeska*, and during those 13 years "Congress [had] responded to [the] decision in *Alyeska* by broadening the availability of attorney's fees in the federal courts" under other

---

[17] Indeed, we are unaware of the PTO ever even seeking attorney's fees under section 145, section 21(b), or their predecessors until very recently (2012).

federal statutes. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987). But Congress did not so broaden section 21, and the district court was wrong to interpret the statute as if Congress had done so. "'[T]he efficacy of an exception to the American rule is a policy decision that must be made by Congress, not the courts.'" *Key Tronic*, 511 U.S. at 819 n.13 (quoting *FMC Corp. v. Aero Indus., Inc.*, 998 F.2d 842, 847 (10th Cir. 1993)).

## C.    The District Court's Ruling Undermines the Policy of the Statute

By holding that an action under section 21(b) will cost an applicant for trademark registration tens of thousands of dollars, if not more, the district court's decision threatens to eliminate a civil action as a realistic alternative for challenging PTO decisions. *See* JA 72 n.2 (acknowledging that, under the court's reading, "Congress no sooner provides this choice than it takes an energetic step to discourage its use"). That anomalous result provides an additional reason to reject the district court's interpretation. *Cf. Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005) ("[T]here is no reason to suppose Congress meant to confer a right . . . , while at the same time discouraging its exercise in all but obvious cases.").

Not only does the district court's reading of section 21(b) tend to undermine the purpose of the statute itself, but it also requires the award of attorney's fees in circumstances totally unlike those giving rise to statutory liability for attorney's

fees under other federal statutes.[18]  In general, statutory attorney's fees provisions serve either a punitive purpose – as a sanction for litigation misconduct or for serious wrongdoing – or they provide an incentive for plaintiffs to pursue private enforcement actions that may have special public-interest benefits.  *See*, *e.g.*, *Fox*, 131 S. Ct. at 2213 (noting that fee-shifting in civil rights cases "at once reimburses a plaintiff for what it cos[t] [him] to vindicate [civil] rights and holds to account a violator of federal law") (alterations in original; citation and internal quotation marks omitted); *Martin*, 546 U.S. at 141 (noting deterrent effect of award of attorney's fees); *Blackburn v. Reich*, 79 F.3d 1375, 1378-79 (4th Cir. 1996); *EEOC v. Clay Printing Co.*, 13 F.3d 813, 817-18 (4th Cir. 1994); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 737 (1987) (Blackmun, J., dissenting) ("[F]ee awards were considered to be 'an essential remedy' in order to encourage enforcement of the law.").

Just as significant, "[m]ost fee-shifting statutes allow the award of fees to the prevailing party," and, even where a district court has discretion to award fees "whenever appropriate" the party seeking fees must show "some degree of success on the merits."  *West Virginia Highlands Conservancy, Inc. v. Norton*, 343 F.3d

---

[18] Of course, a contract may provide for recovery of attorney's fees, and the "common fund" doctrine provides for recovery of attorney's fees out of property preserved or recovered for the benefit of a class of persons.  *See* 10 Wright & Miller § 2675, at 317-18, 322-26.  But there is no argument that such considerations provide a rationale for section 21(b).

239, 244 (4th Cir. 2003) (internal quotation marks omitted); *see also Buckhannon*, 532 U.S. at 607-08.  By contrast, section 21(b) requires a plaintiff to bear all the expenses of the proceeding even when the plaintiff prevails.  That makes the imposition of attorney's fees even more difficult to square with the ordinary treatment of such fees – the context in which Congress was legislating when it adopted section 21(b).  *See Marx*, 133 S. Ct. at 1175.

Congress reasonably could have decided to impose court costs on plaintiffs under section 21(b) – even though they may well be a "heavy economic burden," *Hyatt v. Kappos*, 625 F.3d 1320, 1337 (Fed. Cir. 2010) (en banc) – because the civil action under that provision can be considered a continuation of the application process, for which the applicant must pay, successful or unsuccessful.  But requiring a plaintiff, irrespective of fault, to reimburse the PTO for its attorney's fees, when defending such an action is part of the ordinary duty of any administrative agency, would impose a burden unlike anything else in the law.  By way of comparison, a trademark applicant must pay a filing fee of at most $375, 37 C.F.R. § 2.6(a)(1); if the applicant appeals an adverse decision within the agency, the PTO's rules impose an additional fee of $100, *id.* § 2.6(a)(18).  To force an applicant to bear tens of thousands of dollars or more in attorney's fees if the applicant chooses to access the statutory review mechanism before the district court effectively reads the statute out of the United States Code.  That may be the

result that the PTO hopes for.  But it is not a result that is consistent with the

statute that Congress wrote or with 175 years of legislative history.

## CONCLUSION

The judgment below should be reversed insofar as it awarded the PTO

$32,836.27 in attorney salaries and $3,090.32 in paralegal salaries as "expenses of

the proceeding" under 15 U.S.C. § 1071(b)(3).

## REQUEST FOR ORAL ARGUMENT

The Court should hear oral argument because of the unprecedented nature of

the district court's decision to award attorney's fees to the PTO and the impact that

the decision will have on cases brought under 15 U.S.C. § 1071(b) and, potentially,

35 U.S.C. § 145.

Dated:  June 3, 2014                                    Respectfully submitted,

                                                        /s/ *Aaron M. Panner*

WILLIAM C. STEFFIN                                      AARON M. PANNER
ARMIN AZOD                                             W. JOSS NICHOLS
STEFFIN LELKES AZOD LLP                                KELLOGG, HUBER, HANSEN, TODD,
1801 Century Park East, 24th Floor                        EVANS & FIGEL, P.L.L.C.
Century City, California 90067                          1615 M Street, N.W., Suite 400
(310) 734-8442                                          Washington, D.C. 20036
                                                        (202) 326-7900
WENDY MCGUIRE COATS
    *Of Counsel*                                        JOHN N. JENNISON
MCGUIRE COATS LLP                                      JENNISON & SHULTZ, P.C.
3527 Mt. Diablo Blvd. #281                              2001 Jefferson Davis Hwy.
Lafayette, California 94549                             Suite 1102
(925) 297-6415                                          Arlington, Virginia 22202
                                                        (703) 415-1640

*Counsel for Plaintiff-Appellant*

27

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No.   14-1191      Caption: <u>MILO SHAMMAS v. MARGARET FOCARINO</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    Type-Volume Limitation:  Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines.  Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines.  Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines.  Counsel may rely on the word or line count of the word processing program used to prepare the document.  The word-processing program must be set to include footnotes in the count.  Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

☒      this brief contains 6,794 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐      this brief uses monospaced typeface and contains [_____] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2.    Typeface and Type Style Requirements:  A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒      this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 pt. Times New Roman; *or*

☐      this brief has been prepared in a monospaced typeface using [_____] in [_____].

/s/ *Aaron M. Panner*

AARON M. PANNER

W. JOSS NICHOLS

KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.

1615 M Street, N.W., Suite 400

Washington, D.C. 20036

(202) 326-7900

*Counsel for Plaintiff-Appellant*

June 3, 2014

# ADDENDUM

# TABLE OF CONTENTS

Page

15 U.S.C. § 1071 ................................................................Add. 1

35 U.S.C. § 145 ..................................................................Add. 3

Trademark Act of 1946 ("Lanham Act"), Pub. L. No. 79-489, § 21,
60 Stat. 435 .......................................................................Add. 3

R.S. § 4915 (Patent Act of 1870, ch. 230, § 52, 18 Stat. 950).........Add. 4

Act of March 3, 1839, ch. 88, 5 Stat. 353:

    § 10 ..............................................................................Add. 4

    § 11 ..............................................................................Add. 5

## 15 U.S.C. § 1071

**(a) Persons entitled to appeal; United States Court of Appeals for the Federal Circuit; waiver of civil action; election of civil action by adverse party; procedure**

**(1)** An applicant for registration of a mark, party to an interference proceeding, party to an opposition proceeding, party to an application to register as a lawful concurrent user, party to a cancellation proceeding, a registrant who has filed an affidavit as provided in section 1058 or section 1141k of this title, or an applicant for renewal, who is dissatisfied with the decision of the Director or Trademark Trial and Appeal Board, may appeal to the United States Court of Appeals for the Federal Circuit thereby waiving his right to proceed under subsection (b) of this section: *Provided,* That such appeal shall be dismissed if any adverse party to the proceeding, other than the Director, shall, within twenty days after the appellant has filed notice of appeal according to paragraph (2) of this section, files notice with the Director that he elects to have all further proceedings conducted as provided in subsection (b) of this section.  Thereupon the appellant shall have thirty days thereafter within which to file a civil action under subsection (b) of this section, in default of which the decision appealed from shall govern the further proceedings in the case.

**(2)** When an appeal is taken to the United States Court of Appeals for the Federal Circuit, the appellant shall file in the United States Patent and Trademark Office a written notice of appeal directed to the Director, within such time after the date of the decision from which the appeal is taken as the Director prescribes, but in no case less than 60 days after that date.

**(3)** The Director shall transmit to the United States Court of Appeals for the Federal Circuit a certified list of the documents comprising the record in the United States Patent and Trademark Office.  The court may request that the Director forward the original or certified copies of such documents during pendency of the appeal.  In an ex parte case, the Director shall submit to that court a brief explaining the grounds for the decision of the United States Patent and Trademark Office, addressing all the issues involved in the appeal.  The court shall, before hearing an appeal, give notice of the time and place of the hearing to the Director and the parties in the appeal.

**(4)** The United States Court of Appeals for the Federal Circuit shall review the decision from which the appeal is taken on the record before the United States

Patent and Trademark Office. Upon its determination the court shall issue its mandate and opinion to the Director, which shall be entered of record in the United States Patent and Trademark Office and shall govern the further proceedings in the case. However, no final judgment shall be entered in favor of an applicant under section 1051(b) of this title before the mark is registered, if such applicant cannot prevail without establishing constructive use pursuant to section 1057(c) of this title.

**(b) Civil action; persons entitled to; jurisdiction of court; status of Director; procedure**

**(1)** Whenever a person authorized by subsection (a) of this section to appeal to the United States Court of Appeals for the Federal Circuit is dissatisfied with the decision of the Director or Trademark Trial and Appeal Board, said person may, unless appeal has been taken to said United States Court of Appeals for the Federal Circuit, have remedy by a civil action if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in subsection (a) of this section. The court may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear. Such adjudication shall authorize the Director to take any necessary action, upon compliance with the requirements of law. However, no final judgment shall be entered in favor of an applicant under section 1051(b) of this title before the mark is registered, if such applicant cannot prevail without establishing constructive use pursuant to section 1057(c) of this title.

**(2)** The Director shall not be made a party to an inter partes proceeding under this subsection, but he shall be notified of the filing of the complaint by the clerk of the court in which it is filed and shall have the right to intervene in the action.

**(3)** In any case where there is no adverse party, a copy of the complaint shall be served on the Director, and, unless the court finds the expenses to be unreasonable, all the expenses of the proceeding shall be paid by the party bringing the case, whether the final decision is in favor of such party or not. In suits brought hereunder, the record in the United States Patent and Trademark Office shall be admitted on motion of any party, upon such terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, without prejudice to the right of any party to take further testimony. The testimony and exhibits of the record in the United States Patent and Trademark Office, when admitted, shall have the same effect as if originally taken and produced in the suit.

 **(4)** Where there is an adverse party, such suit may be instituted against the party in interest as shown by the records of the United States Patent and Trademark Office at the time of the decision complained of, but any party in interest may become a party to the action.  If there are adverse parties residing in a plurality of districts not embraced within the same State, or an adverse party residing in a foreign country, the United States District Court for the Eastern District of Virginia shall have jurisdiction and may issue summons against the adverse parties directed to the marshal of any district in which any adverse party resides.  Summons against adverse parties residing in foreign countries may be served by publication or otherwise as the court directs.

## 35 U.S.C. § 145

An applicant dissatisfied with the decision of the Patent Trial and Appeal Board in an appeal under section 134(a) may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in the United States District Court for the Eastern District of Virginia if commenced within such time after such decision, not less than sixty days, as the Director appoints.  The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Patent Trial and Appeal Board, as the facts in the case may appear and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law.  All the expenses of the proceedings shall be paid by the applicant.

## Trademark Act of 1946, Pub. L. No. 79-489, § 21, 60 Stat. 435

Any applicant for registration of a mark, party to an interference proceeding, party to an opposition proceeding, party to an application to register as a lawful concurrent user, party to a cancelation proceeding, or any registrant who has filed an affidavit as provided in section 8, who is dissatisfied with the decision of the Commissioner, may appeal to the United States Court of Customs and Patent Appeals or may proceed under section 4915, Revised Statutes, as in the case of applicants for patents, under the same conditions, rules, and procedure as are prescribed in the case of patent appeals or proceedings so far as they are applicable: *Provided*, That any party who is satisfied with the decision of the

Commissioner shall, upon the filing of an appeal to the Court of Customs and Patent Appeals by any dissatisfied party, have the right to elect to have all further proceedings under Revised Statutes 4915, by election as provided in Revised Statutes 4911.  The Commissioner of Patents shall not be a necessary party to an inter partes proceeding under Revised Statutes 4915, but he shall be notified of the filing of the bill by the clerk of the court in which it is filed and the Commissioner shall have the right to intervene in the action.

### R.S. § 4915 (Patent Act of 1870, ch. 230, § 52, 18 Stat. 950)

Whenever a patent on application is refused, either by the Commissioner of Patents or by the supreme court of the District of Columbia upon appeal from the Commissioner, the applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear.  And such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication, and otherwise complying with the requisitions of law.  In all cases, where there is no opposing party, a copy of the bill shall be served on the Commissioner; and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not.

### Act of March 3, 1839, ch. 88, 5 Stat. 353

Section 10.

*And be it further enacted*, That the provisions of the sixteenth section of the before recited act shall extend to all cases where patents are refused for any reason whatever, either by the Commissioner of Patents or by the chief justice of the District of Columbia, upon appeals from the decision of said Commissioner, as well as where the same shall have been refused on account of, or by reason of, interference with a previously existing patent; and in all cases where there is no

opposing party, a copy of the bill shall be served upon the Commissioner of Patents, when the whole of the expenses of the proceeding shall be paid by the applicant, whether the final decision shall be in his favor or otherwise.

Section 11.

*And be it further enacted*, That in all cases where an appeal is now allowed by law from the decision of the Commissioner of Patents to a board of examiners provided for in the seventh section of the act to which this is additional, the party, instead thereof, shall have a right to appeal to the chief justice of the district court of the United States for the District of Columbia, by giving notice thereof to the Commissioner, and filing in the Patent Office, within such time as the Commissioner shall appoint, his reasons of appeal, specifically set forth in writing, and also paying into the Patent Office, to the credit of the patent fund, the sum of twenty-five dollars. And it shall be the duty of said chief justice, on petition, to hear and determine all such appeals, and to revise such decisions in a summary way, on the evidence produced before the Commissioner, at such early and convenient time as he may appoint, first notifying the Commissioner of the time and place of hearing, whose duty it shall be to give notice thereof to all parties who appear to be interested therein, in such manner as said judge shall prescribe. The Commissioner shall also lay before the said judge all the original papers and evidence in the case, together with the grounds of his decision, fully set forth in writing, touching all the points involved by the reasons of appeal, to which the revision shall be confined. And at the request of any party interested, or at the desire of the judge, the Commissioner and the examiners in the Patent Office, may be examined under oath, in explanation of the principles of the machine or other thing for which a patent, in such case, is prayed for. And it shall be the duty of said judge, after a hearing of any such case, to return all the papers to the Commissioner, with a certificate of his proceedings and decision, which shall be entered of record in the Patent Office; and such decision, so certified, shall govern the further proceedings of the Commissioner in such case; *Provided, however*, That no opinion or decision of the judge in any such case, shall preclude any person interested in favor or against the validity of any patent which has been or may hereafter, be granted, from the right to contest the same in any judicial court, in any action in which its validity may come in question.

## CERTIFICATE OF SERVICE

I hereby certify that, on June 3, 2014, I electronically filed the foregoing Brief for Plaintiff-Appellant Milo Shammas with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system.

I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished through the appellate CM/ECF system.


　　　　　　　　　　/s/ *Aaron M. Panner*　　
　　　　　　　　　　Aaron M. Panner